Verdict for defendant.

---

## LUTZ et .al. v. MAGONE, Collector.

*(Circuit Court, S. D. New York.   January 14, 1890.*

1.  CUSTOMS DUTIES—FREE-LIST—ACIDS.
    The meaning of the provision for "all acids used for medicinal, chemical, or manufacturing purposes, not specially enumerated or provided for," contained in the free-list of the tariff act of March 3, 1883, (22 U. S. St. at Large, 488; Tariff Index, new, 594,) seems to be that acids which are used for the reason that, by their chemical combination with other articles, they produce substances medicinal, substances chemical, or substances which are regarded as the fruits of manufacture, are to be admitted free of duty.

2.  SAME—SACCHARINE.
    Saccharine, which is a chemical compound consisting of a dry white powder, sweeter by from 280 to 300 times than cane sugar; which is chiefly used in soda and mineral waters, liquors, wines, preserves, chewing tobacco, chewing gums, medicines, and other things, but for the sole purpose of sweetening them; and which, though chemically an acid, is always bought and sold under the name of "saccharine," and never under that of "acid,"—is not free of duty under the above-mentioned provision for acids, but is dutiable, as a "chemical compound," at the

rate of 25 per cent. *ad valorem,* under the provision for "all chemical compounds, * * * by whatever name known, and not specially enumerated or provided for," contained in Schedule A of the aforesaid tariff act of 1883, (Tariff Index, new, 92.)

At Law. Action to recover back duties.

Louis Lutz, the original plaintiff in this suit, imported in his lifetime, from Hamburg, Germany, into the port of New York, during the year 1887, certain saccharine. This saccharine was classified for duty by the defendant as collector of customs at that port as a "chemical compound," under the provision for "all chemical compounds, * * * by whatever name known, and not specially enumerated or provided for," contained in Schedule A of the tariff act of March 3, 1883, (22 U. S. St. at Large, 488; Tariff Index, new, 92,) and duty thereon at the rate of 25 per cent. *ad valorem* was exacted. Against this classification and exaction the said Lutz duly protested, claiming that this saccharine was free of duty as "an acid used for medicinal, chemical, or manufacturing purposes, not specially enumerated or provided for," under the provision for such acids contained in the free-list of the aforesaid tariff act, (Tariff Index, new, 594.) The said Lutz also duly made appeals to the secretary of the treasury, and, within 90 days, after adverse decisions were rendered therein by him, brought this suit to recover the duties exacted as aforesaid. Upon the trial of this suit it appeared from the invoices of this saccharine that its invoice price was about $10 a pound; from a sample of the same, that it was a dry white powder, and sweet to the taste; from the labels on the packages in which it was put upon the market in this country, that it was described as "Dr. Fahlberg's Saccharine, Patented," etc.; and from letters patent covering the same, that it was manufactured from tolnene and other derivatives of coal tar. It appeared from the testimony of the plaintiffs' witnesses that this saccharine was from 280 to 300 times as sweet as cane sugar; that its chemical name was "orthosulphamin benzoic acid anhydrid;" that this name chemically denoted an acid from which the water had been removed, and that, tested with litmus paper or an alkaline, it was shown to be chemically an acid, but that it was always bought and sold under the name of saccharine, and never under that of acid; that it was chiefly used in soda and mineral waters, liquors, wines, preserves, chewing tobaccos, chewing gums, medicines, and other things, for the sole purpose of sweetening them; but that it had no medicinal effect on the human or animal system. It appeared from the defendant's testimony that this saccharine was chemically an anhydrid, and not an acid, the distinction between the two being that an anhydrid was an acid from which the water was removed; and that it was a chemical compound. Both sides having rested, counsel for the defendant moved the court to direct the jury to find a verdict in his favor, on the ground, among other things, that this saccharine was not "an acid used for medicinal, chemical, or manufacturing purposes," within the meaning of the aforesaid tariff act of 1883.

*Comstock & Brown,* for plaintiffs.

v.41F.no.3—9

*Edward Mitchell*, U. S. Atty., and *Thomas Greenwood*, Asst. U. S. Atty., for defendant.

LACOMBE, J., (*orally charging jury.*)   This article is, of course, a "chemical compound," (the term is an extremely broad one,) and would be dutiable as such, unless found in the free-list, (Tariff Index, new, 594.)   In order to show that it is found in that paragraph, the burden lies upon the plaintiffs to show that it is an "acid used for medicinal, chemical, or manufacturing purposes."   Now, it appears that this article is mechanically combined with various other substances in the course of their manufacture, for the sole purpose of sweetening, which it does by its mere presence, being added, unchanged in condition, to the article with which it is mixed.   That may be a manufacturing purpose, and, when so combined, the result may be a manufacture; but the saccharine is not thereby used as an acid in manufacture.   The meaning of this paragraph seems to be that acids, which are used for the reason that, by their chemical combination with other articles, they produce substances medicinal, substances chemical, or substances which are regarded as the fruits of manufacture, are to be admitted free.   But this article, when used for manufacturing purposes, is not used as an acid at all.   The article, saccharine, is mechanically combined or diluted with other articles, and the resultant articles are pleasant to the taste by reason of the circumstances of their being sweetened with the saccharine; but saccharine so used cannot be fairly maintained, under the phraseology of this paragraph, to be an "acid used for manufacturing purposes."   Surely no one who makes the chewing tobacco, the liquors, or the preserves referred to in testimony, if asked the question, "Do you use any acids in your process of manufacture?" would answer in the affirmative, on the strength of the fact that he uses this saccharine to sweeten his products.   Verdict directed for the defendant.